IRVIN and others *vs.* CONKLIN and others.

To enable creditors of a partnership to recover a debt against an individual as a partner, on the ground that he held himself out as a partner, they must prove affirmatively that he did so represent and hold himself out, to *them*, or at least that they were informed of such representations, before the credit was given to the firm.

A person not a partner, in fact, in a firm, will not make himself liable to creditors, for the debts of the firm, by representing or holding himself out as a partner, unless it appears that the creditors gave credit to the firm, *after* such representation or holding out came to their knowledge.

The ground upon which one holding himself out as a partner is held liable as such, to creditors, is that of estoppel. And it is of the very essence of the estoppel, in such a case, that the creditor trusted the firm with knowledge of the fact that the individual either held himself out, or suffered himself to be held out, as a partner.

If there is no evidence that the creditors knew, at the time the goods were sold to the firm, that an individual had held himself out, or suffered himself to be held out as a partner, the latter will not be estopped from denying his liability as such.

APPEAL by the defendants from a judgment entered upon the report of a referee. The action was brought by the plaintiffs against the defendants to recover the amount of two promissory notes made by said defendants, Henry N. Conklin, Abraham Inslee, David Harrisson and Stephen B. Conklin, under and by their firm or copartnership name of Conklin, Inslee & Co. The defendants all answered the complaint, their answer being a general denial. The cause was referred to a referee, who, on the 29th day of December, 1859, made his report in favor of the plaintiffs and against all the defendants.

*Wm. H. Scott,* for the defendants.

*Thos. Nelson,* for the plaintiffs.

SUTHERLAND, J. The notes upon which this action was brought were made and delivered by Stephen B. Conklin, one of the defendants, in the firm name of Conklin, Inslee &

Co. The contested question before the referee was, whether the defendant David Harrisson was a member of the firm when the notes were given. The referee, in his first or original report, found as facts, that the sales of the iron by the plaintiffs to the firm of Conklin, Inslee & Co., for which the notes were given, were negotiated through a broker ; that before the sales were made, and the notes given, Stephen B. Conklin, one of the firm, represented to the broker that Harrisson was a member of the firm ; of which representation the plaintiffs were informed by the broker before the sales ; and that the plaintiffs were thereby induced to make the sales and take the notes.

The referee then finds that Harrisson was often at the place of business of Conklin, Inslee & Co. from the time the firm commenced business, in the spring of 1857 ; and also finds and states, in detail, certain facts and circumstances tending to show that Harrisson held himself out to the world as a member of the firm ; these facts and circumstances relating principally to the printing and publishing by the *firm* of business cards and envelopes with the name of the defendant Harrisson on them. The referee then finds that Harrisson did not discountenance the use of these cards and envelopes, or take any steps towards their suppression.

As apparently a conclusion from these facts, the referee finds as a fact, that at the time of the sales of the iron and the giving the notes, the defendant Harrisson was a member of the firm.

In a further or supplemental report, the referee finds that while there was no express testimony that any of the cards or envelopes came to the knowledge of the plaintiffs, he thought it reasonable to infer that they did ; and so finds accordingly.

In a still further report, the referee reports that he did not, in deciding the case, consider the representation of Stephen B. Conklin to the broker, that Harrisson was a member of

the firm, as evidence, except as against the defendant Stephen B. Conklin.

Upon all these reports and findings, I am at a loss to know whether the referee held Harrisson liable on the notes on the ground that he was in fact a member of the firm, when the notes were given, or upon the ground that he held himself out to the plaintiffs as such partner, and was therefore estopped from saying that he was not a partner.

In my opinion, the judgment, as against Harrisson, cannot be sustained on either ground.

To enable the plaintiffs to recover against Harrisson on the ground that he held himself out as a partner, the plaintiffs should have proved, affirmatively, that he did so hold himself out to *them ;* at least they should have proved that one of the cards or envelopes, with his name on it, came into their possession, or to their knowledge. There is no such proof; nor does the referee find such to be the fact. He merely finds it reasonable to infer that some of the cards and envelopes did come to the plaintiffs' knowledge before the giving of the notes. This finding is immaterial. Supposition or reasonableness does not prove a fact.

As to the finding of the referee, that Harrisson was in fact a partner, I do not think we can sustain it on the ground that there was a conflict of testimony on that question. There really was no such conflict. Harrisson swore positively that he never was a member of the firm. On the part of the plaintiffs there was no direct evidence that he was a member. It certainly is not necessary to cite authorities to show that the declarations of the other defendants, that he was a partner, were not evidence against him, and could not make him a member of the firm.

There is nothing in the case to show that he was a member of the firm, except the facts and circumstances stated in the referee's report, going to show that he held himself out as a partner; and these circumstances have but little weight, and are not irreconcilable with the truth of Harrisson's oath

that he was not a partner. There is no evidence that *he* had the business cards with his name on them printed; or that he published or distributed them. The most that the evidence on the part of the plaintiffs amounts to is, that he saw the cards, and did not remonstrate against their use or distribution. He swears that he did remonstrate against this use of his name; and there is other evidence to corroborate him.

Upon the whole, I am of the opinion that the judgment should be reversed, and that there should be a new trial.

MULLIN, J. The only question presented on this appeal is, whether the defendant Harrisson was, as to the plaintiffs in this action, a partner in the firm of Conklin, Inslee & Co.

It is not pretended that he was in fact a partner in the firm; but it is insisted that on the facts proved he was liable to the creditors of the said firm, for its debts, because he suffered himself to be held out as a partner therein.

The evidence from which the referee has drawn the conclusion that Harrisson was liable, is—1st. That he was frequently in the place of business of the firm, and on one occasion declared himself a partner; and 2d. That he suffered cards and envelopes with his name printed thereon, as being a member of said firm, to be circulated by said firm.

I will not take up time in the examination of the evidence in the case. It is only necessary to say that the only act of recognition by Harrisson of his connection with the firm is that on one occasion, when in conversation with the engineer, the latter remarked he would like to have the engine room closed in. Harrison replied, " *We will have all things right, by and by.*" Harrisson denies that he used any such language, and the referee does not find that H. ever had any such conversation, or that he ever admitted himself to be a member of the firm, except so far as his connection with the printing and circulating the cards and envelopes may establish such a connection.

The referee has found, upon conflicting evidence, that the cards and envelopes with Harrisson's name on as a member of the firm, were printed and circulated with his knowledge and consent. If these facts make him, in law, liable as a partner in the firm, the judgment is right; otherwise not.

A person is not liable as a partner for representing or holding himself out as a partner in a firm, unless it also appears that the creditor gave credit to the firm after such representation or holding out came to his knowledge. The person thus sought to be constituted a partner is held liable on the ground of estoppel. The law will not permit him to deny his connection with the firm, as to those persons who have trusted the firm after they became informed of his assumed connection therewith. It is of the very essence of the estoppel, in such case, that the creditor trusted the firm with knowledge of the fact that the person sought to be estopped, either held himself out or suffered himself to be held out as a partner. (*Lawrence* v. *Brown*, 1 *Seld.* 394.)

In *Chitty on Contracts, p.* 243, it is said a mere admission by a person that he is a partner in a firm, is not, it seems, conclusive as to his liability, if made to the contracting party *after* he has contracted with the firm, though a declaration, made *before* that time, would be so.

In *Parsons' Mercantile Law, p.* 167, it is said, " The true rule, we think, (although it may not be quite settled,) is this, that one who thus holds himself out as a partner when he really is not one, is responsible to a creditor who on these grounds believed him to be a partner, but not to one who knew nothing of the facts, or who, knowing them, knew also that this person was not a partner." (*Dickinson* v. *Valpy*, 10 *B. & C.* 128, 140. *Pott* v. *Eyton*, 3 *C. B.* 32, 39, *and other cases cited in note* 3 *to Parsons, p.* 167.)

In *Holcroft* v. *Hoggins et al.*, (52 *Eng. Com. Law Rep.* 488,) the plaintiff sued to recover compensation for writing certain articles for a newspaper of which the defendants had been proprietors, and whose names as proprietors still ap-

Irvin *v.* Conklin.

peared in the stamp office and on the paper itself. The contract was shown to have been in fact made with one Lowthin, after the defendants' interest in the paper had ceased. The defendants were held not liable. Tindal, Ch. J. says : " The evidence was that the contract was made by Lowthin on his own responsibility, and not on that of the defendants. It is true that on the register of the stamp office they held themselves out as proprietors ; and if it had been shown that the plaintiff was thereby induced to enter into the contract, they might have been liable. But upon the evidence given, it seems to me the plaintiff is out of court." The other judges concurred, and the rule to show cause why the verdict should not be entered against the defendant was discharged.

In *Pott and others* v. *Eyton,* (54 *Eng. Com. Law Rep.* 31,) Eyton, being interested in a colliery, made an arrangement with Jones for opening a shop for supplying the workmen at the colliery. Eyton put up the shop, placed his name over the door, licenses were taken out in his name, and goods purchased and invoiced in his name, and he paid for the same. Eyton received £7, per cent on the sales, for his own use, and the balance of the property went to Jones. It was afterwards arranged that Jones should buy the goods in his own name and Eyton should receive £5, per cent on the sales, and he suffered his name to remain over the door. Jones became indebted to the plaintiffs and others, and this action was brought against Eyton & Jones as partners, to recover such debt. There was no evidence to show that credit was in fact given to Eyton by the creditors, or that they knew that his name had appeared over the door, or in the licenses, or that they ever supposed him to be a partner. Two questions were submitted to the jury : 1st. Whether there was such a sharing of the profits as constituted Eyton an actual partner ; and 2d. Whether Eyton had been, by his own permission, held out as a partner, and his credit pledged to the bank. Both were answered in the negative, and a verdict for the defendant. The court, in banc, refused to set it aside.

These cases are decisive of the one at bar. In this case there is no evidence that the plaintiffs knew, when the iron was sold to Conklin, Inslee & Co., that Harrisson was in the habit of visiting their office; or that he had had the conversation testified to by the engineer; or that he knew of, or assented to, the printing and circulation of the cards and envelopes. Without this proof, Harrisson is not estopped from denying his liability; and without it, he is not liable for the debts of the firm.

I am quite clear that the referee has erred in holding Harrisson liable as a partner; and that the judgment should be set aside and a new trial had before another referee.

CLERKE, P. J. concurred.

New trial granted.

[NEW YORK GENERAL TERM, November 4, 1861. *Clerke, Sutherland* and *Mullin,* Justices.]